OPINION OF THE COURT
Caesar Cirigliano, J.
The petitioner brings this action pursuant to CPLR article 78, seeking the issuance of an order vacating the five-year period of postrelease supervision imposed by the Department of Correctional Services and requiring the Division of Parole to vacate parole violation warrant No. 38806.
Procedural History
On April 5, 2000, petitioner was sentenced by the Honorable Carol Berkman, Supreme Court, New York County, to a determinate term of six years for burglary in the second degree, a class C felony. At the time of sentencing, however, the court did not impose a period of postrelease supervision (hereinafter PRS) as part of the sentence or commitment order. Regardless, a five-year period of postrelease supervision was administra *724 lively imposed by respondent, New York State Department of Correctional Services (hereinafter DOCS).
On November 26, 2004, petitioner was released to PRS under the supervision of respondent, New York State Division of Parole (hereinafter Division). Petitioner was to be supervised by the Division until November 26, 2009.
On January 4, 2006, petitioner was declared delinquent with respect to his parole obligations and charged with six violations of his parole. Thereafter, parole violation warrant No. 38806 was executed. On February 6, 2006, petitioner was served with a notice of violation.
The petitioner waived his preliminary parole revocation hearing, and on February 23, 2006 at his final parole revocation hearing, petitioner was found to have violated the conditions of his release and a delinquent time assessment of 12 months was imposed.
Petitioner is currently incarcerated in Riker’s Island and cannot proceed via a writ of habeas corpus as unrelated criminal charges are pending against him for which bail has not been posted.
The petitioner interposed his order to show cause on September 22, 2006 and the petition was marked submitted on October 18, 2006. Respondent submitted his cross motion to dismiss on the same date.[1]
On November 3, 2006, this court rendered a written decision on this matter denying respondent’s cross motion to dismiss the verified petition.
Following the decision, respondent moved to restore the matter to the calendar for submission of an answer, to reargue, and to renew on the basis that in his previous cross motion respondent had reserved the right to file an answer pursuant to CPLR 7804 (f). On January 5, 2007, the court rendered another written decision granting the respondent’s request to file his answer in furtherance of the parties’ due process rights and in the interest of justice. In addition, the court scheduled the matter for oral argument on the portions of the motion which sought renewal and reargument. Subsequently, however, respondent withdrew his motion to renew and reargue.
Now, in his answer, respondent raises the same issues that were raised in his cross motion which were previously addressed *725 by this court in its November 3, 2006 decision and the court adheres to the determinations made therein; however, respondent does raise a novel issue which is the statute of limitations as it applies to an article 78 proceeding.
Discussion
Statute of Limitations
Petitioner’s original motion requested that the court direct the Division and DOCS to vacate the parole warrant and the PRS and to in effect release him which is clearly in the nature of mandamus. (See, CPLR 7801.)
CPLR 217 (1) states that:
“Unless a shorter time is provided in the law authorizing the proceeding, a proceeding against a body or officer must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner or the person whom he represents in law or in fact, or after the respondent’s refusal, upon the demand of the petitioner or the person whom he represents, to perform its duty” (emphasis added).
It has been held that for the purposes of the statute of limitations, in a case of an article 78 in the nature of mandamus, the clock starts to run not from the final determination by a “body or officer” but from the refusal of the “body or officer” to act or to perform a duty enjoined by law. (See, Austin v Board of Higher Educ. of City of N.Y., 5 NY2d 430 [1959].) Ordinarily, the courts have opined that a petitioner must first make a demand and then await a refusal before bringing an article 78 proceeding in the nature of mandamus as the statute of limitations does not run out until four months after the refusal. (Id. at 442.) However, courts have held that an order to show cause in and of itself can be deemed the demand and that the following answer can be deemed a refusal. (See, Community Planning Bd. No. 4 [Manhattan] v Homes for the Homeless, 158 Misc 2d 184 [Sup Ct, NY County 1993]; Rowe v City of New York, 162 Misc 2d 683 [Sup Ct, NY County 1994].)
In the case at bar, the respondent argues that petitioner needed to commence the instant action within four months of November 26, 2004, that is the day he was released from prison to postrelease supervision. On the other hand, petitioner argues that the proceeding is not time-barred as the nature of the present article 78 is one of mandamus which is triggered whenever *726 an agency has not performed its duty in accordance with the law. Petitioner argues that since the present article 78 is one in the nature of mandamus, that the clock did not start to run until the respondent refused to perform its duty upon a demand from petitioner. Moreover, citing Rowe v City of New York (162 Misc 2d 683 [Sup Ct, NY County 1994]), petitioner argues that, “where no prior demand for compliance is made, the Article 78 petition and the agency’s answer in opposition will themselves be deemed a demand and the refusal.”
Here, the court is in agreement with petitioner’s assessment of when the clock started to run for the purpose of the statute of limitations as the instant article 78 is in the nature of mandamus. Further, the clock started running upon the demand for compliance, that is the article 78 petition, and the refusal, that is the verified answer herein. Therefore, the instant claim is not time-barred since the four-month clock did not start to run before the commencement of this action; thus, that part of respondent’s argument which seeks dismissal on the basis of the statute of limitations is denied.
Article 78
Respondent argues that “an Article 78 proceeding or an Article 70 proceeding are not available to challenge the legality of a sentence that could have been reviewed directly by way of appeal or pursuant to Criminal Procedure Law § 440.” In the instant case, petitioner is currently imprisoned as a result of an administratively imposed period of postrelease supervision and it is within his right to question the authority of the agency that imprisoned him. CPLR 7803 states the questions that are raised on an article 78 proceeding which are:
“1. whether the body or officer failed to perform a duty enjoined upon it by law; or
“2. whether the body or officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction; or
“3. whether a determination was made in violation of lawful procedure, was affected by error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed . . . .”
There is no doubt that these inquiries are the proper ones for an individual in petitioner’s position to make. In an article 78 proceeding in the nature of mandamus to compel, a petitioner can demand an action from an administrative body; in this case, *727 the petitioner is actively demanding the vacatur of the parole warrant and his immediate release from incarceration. In a case such as the one before the court, the inquiry and demand are proper under an article 78 proceeding.
I have reviewed all of the decisions by my colleagues who opined that the only remedy available to a petitioner such as the one before this court is a CPL article 440 motion and I concur in their opinions that a defendant has the right and option to review an improper sentence by either a motion pursuant to CPL article 440 or appeal; however, I obviously disagree as to the exclusivity of the remedy. It is this court’s opinion that an individual similarly situated to petitioner’s position has the option of seeking review of his postrelease supervision sentence either by way of a CPL article 440 motion, a writ of habeas corpus or, as in the case at bar, an article 78 proceeding.
Penal Law § 70.45
Penal Law § 70.45 (1) provides in relevant part that “fejach determinate sentence also includes, as a part thereof, an additional period of post-release supervision" (emphasis added).
Respondent’s core argument is that postrelease supervision is “imposed automatically by operation of law, [and] it is not imposed through the administrative action of the Division or DOCS.” Further, “[b]ecause post-release supervision is not administratively imposed by the Division or DOCS, there is no due process claim against the Division or DOCS for the Court to consider.”
The conclusion that Penal Law § 70.45 is “imposed automatically” has been reached by the Third and Fourth departments in what it is deemed as the pre-Earley v Murray (451 F3d 71 [2d Cir 2006]) period. Those pre-Earley v Murray (hereinafter preEarley) cases mainly held that PRS is automatically included in the sentence and thus obviated the need for a judge to clearly set forth on the record that it is part of the sentence unless said judge seeks to shorten the mandatory five-year period. (See, People v Hollenbach, 307 AD2d 776 [4th Dept 2003]; People v Crump, 302 AD2d 901 [4th Dept 2003]; People v Thweatt, 300 AD2d 1100 [4th Dept 2002]; People v Bloom, 269 AD2d 838 [4th Dept 2000].)
In People v Bloom (at 838), which is the first case to conclude that PRS is automatic, the Appellate Division, Fourth Department, relying exclusively on Justice Donnino’s Practice Commentary in McKinney’s Consolidated Laws of New York, held that “[t]here was no need for the court to specify a period of *728 post-release supervision.” Justice Donnino Practice Commentary (McKinney’s Cons Laws of NY, Book 39, Penal Law § 70.45, at 396) simply states that “[f]or violent felonies committed, on or after September 1, 1998, for which a determinate sentence of imprisonment is imposed, a period of ‘post-release supervision,’ provided for by this section, is included as part of that determinate sentence of imprisonment,” which merely repeats the import of the section. There is not the slightest indication that Justice Donnino, nor the esteemed Justices in the Third and Fourth departments, ever considered the issues this court is presently deciding: whether an administrative body can be directed to comply with the contents of commitment papers which by law they are bound to follow, and the due process rights of a defendant to be informed at the sentence of all the terms and conditions. The pr e-Earley authorities respondent relies upon to argue that “a period of post-release supervision is automatically included in the sentence and, therefore the court was not required to specify it during sentencing,” did not consider, address, nor decide the issues presently before this court, and, therefore, they are distinguishable.
Respondent argues strongly that this court is bound by the holding of Matter of Deal v Goord (8 AD3d 769 [3d Dept 2004], appeal dismissed 3 NY3d 737 [2004], rearg denied 4 NY3d 795 [2005]), in that the Court in Deal, while deciding an article 78 proceeding, held that the Division did not perform a judicial function as it was enforcing a statutorily required part of petitioner’s sentence thus making prohibition an unavailable remedy. Further, respondent argues that since the Court of Appeals dismissed the appeal sua sponte on the ground that “no substantial constitutional question is directly involved” that it undermines the rationale that the New York Court of Appeals had not considered the issue of due process. However, as yet another pr e-Earley case, Deal once again fails to address the particular issues this court faces. Specifically, the Court in Deal and the New York Court of Appeals did not consider Hill v United States ex rel. Wampler (298 US 460 [1936]) and its progeny as it applies to the imposition of PRS postsentence, and did not consider the issue of the Division and/or DOCS being conclusively bound by commitment papers accompanying a prisoner and their lack of authority to add or detract from said commitment papers.
The Court of Appeals has in fact held that DOCS is “[obliged] to comply with the plain terms of the last commitment order *729 received” (Matter of Murray v Goord, 1 NY3d 29, 32 [2003]), and, moreover, that “prison officials are conclusively bound by the contents of commitment papers accompanying a prisoner” (id., quoting Middleton v State of New York, 54 AD2d 450, 452 [3d Dept 1976], affd 43 NY2d 678 [1977]). In Murray, the petitioner brought an article 78 proceeding against DOCS seeking an order to compel DOCS to recalculate his sentence. The Court of Appeals dealt with the issue that is at the core of the instant matter, which is sentencing, and in Murray the Court in fact held that DOCS had to abide by the commitment papers that accompany a prisoner.
The holding in Murray (supra) is very relevant to the series of cases recently decided by the First Department. (See People v Thomas, 35 AD3d 192 [1st Dept 2006]; People v Lingle, 34 AD3d 287 [1st Dept 2006]; People v Sparber, 34 AD3d 265 [1st Dept 2006].) Respondent argues that those post-Earley cases also support his contention that PRS is imposed automatically by operation of law and therefore not through the administrative actions of the Division or DOCS. However, the importance of this line of cases is that for the first time the court appears to address the constitutional stumbling blocks in the imposition of PRS postsentence. More importantly, for the first time while considering the due process issues, the court makes it a point to consider a defendant’s commitment sheet as a vehicle to cure any potential due process violations. In fact, though a judge may not have pronounced PRS at the time of sentencing, if PRS was included in the commitment sheet prepared by the clerk of the court and signed by the judge, then any potential due process infirmity is deemed cured.
However, when confronted with a case such as the one before this court, where there is no pronouncement in the commitment sheet regarding PRS then, clearly, potential due process violations come to the forefront even when adhering to the First Department line of cases. Moreover, where an agency receives a commitment sheet that is silent regarding PRS, then pursuant to Murray (supra), neither the Division nor DOCS should have sought to alter said commitment sheet by adding the sentence of PRS. The fact that the Division and DOCS had a barrier to the imposition of any alteration to the established sentence and yet still proceeded to act by adding PRS, is undeniably contrary to the Court of Appeals’ holding in Murray.
Which brings us to the next issue dealing specifically with due process and the questionable validity of a statute that *730 divests the judiciary’s authority to pronounce sentence. It is well recognized that “the sentence imposed by the sentencing judge is controlling; it is this sentence that constitutes the court’s judgment and authorizes the custody of a defendant” (Earley v Murray at 75; see also Hill v United States ex rel. Wampler, supra). In discharging this duty, it is incumbent upon the court to be vigilant as it assures that the defendant’s constitutional rights are protected. Obviously, in order to comport with the Due Process Clauses of the Constitution of the United States and the Constitution of the State of New York, the court in imposing a sentence must be specific as to the components of said sentence and must rest comfortably in the fact that defendant has complete understanding of what his sentence entails. This is the platform on which Earley (supra) stands.
In Wampler, the clerk of the court, pursuant to custom, added a condition to the defendant’s sentence of 18 months and a $5,000 fine, specifically, that the defendant was to remain in custody until he paid his fine. In holding that the clerk did not have the power to alter the sentence imposed by the court by way of a “warrant of commitment,” Justice Cardozo opined that “[t]he only sentence known to the law is the sentence or judgment entered upon the records of the court. . . [u]ntil corrected in a direct proceeding, it says what it was meant to say, and this by an irrebuttable presumption.” (298 US at 464.) The Court in Wampler, therefore, excluded a “warrant of commitment” prepared by a clerk of the court.[2] This is clearly analogous to DOCS imposing PRS postsentence where a judge has not imposed it on the record, and also analogous to the holding of Murray (supra) where neither DOCS nor the Division are empowered with the authority to alter a prisoner’s accompanying commitment sheet.
Now in the matter of Earley (supra), the court relied substantially on Wampler to hold that a violation of the Due Process Clause of the United States Constitution occurs when sentence is imposed upon a criminal defendant administratively or by operation of law, rather than by the judicial branch of government.
The respondent in Earley (462 F3d 147, 148 [2006]) consequently petitioned the court for rehearing of the decision and *731 argued in part that the court “failed to recognize that New York law automatically includes a period of PRS in every determinate sentence.” The court however, held fast to its prior determination and rejected respondent’s arguments, once again stating that “we adhere to our view that the inclusion of a five-year period of PRS in [petitioner’s] sentence when that PRS was not included in the sentence imposed at [petitioner’s] sentencing hearing violated his rights under the Due Process Clause of the United States Constitution” (id.). Further, the court emphasized that a “judicially-imposed sentence includes only those elements explicitly ordered by the sentencing judge” (at 149).
This court is aware that “the interpretation of . . . Federal constitutional [law] by the lower Federal courts ... is persuasive authority \but\ not binding [authority on New York courts].” (People v Kin Kan, 78 NY2d 54, 60 [1991] [emphasis added].) However, what is binding authority is the holding of Wampler (supra), upon which Earley (supra) stands. Thus, what makes the decision in Earley extremely persuasive is its adherence to, reliance on and interpretation of Wampler and the US Constitution. On that basis alone, it merits adherence.
Assuming, arguendo, that the plain language of Penal Law § 70.45 in its relevant part requires an automatic addition of PRS that need not include the judgment of the judiciary except if a shorter period is given, then in effect the Legislature has usurped the judiciary’s authority, which violates the separation of powers on one hand and clearly strips a defendant from his due process rights on the other. It is undoubtedly a double edged sword. As I read the opinions of my colleagues, whom I respect, it strikes me that there has not been any challenge to the holding of Wampler (supra) that sentencing is exclusively a judicial function. It follows logically, that any statute that invades that exclusivity and that, at the same time, denies the due process rights of an individual is constitutionally questionable. Be that as it may, this court is bound by the premise that the judiciary may not substitute its judgment and discretion for the judgment of the Legislature. (See generally, McKinney’s Cons Laws of NY, Book 1, Statutes § 73, at 145-156.) Moreover, this issue is not before the court.
Conclusion
Postrelease supervision is an integral part of a sentence and can only be imposed by the court. Here, neither Justice Berk-man, who imposed sentence, nor the commitment sheet received *732 by DOCS include PRS. Further, the Division and DOCS are bound to follow the plain meaning of the commitment sheet accompanying the prisoner and failed to do so. Therefore, this court is adhering to the persuasive holding of Earley (supra) and its reliance on Wampler (supra), which hold that the actions by the respondent(s) violated the petitioner’s due process rights under the 14th Amendment of the US Constitution, and respondent(s) exceeded their authority in administratively imposing PRS upon petitioner.
Accordingly, the five-year period of postrelease supervision imposed against petitioner is vacated as is parole violation warrant No. 38806. The petitioner is hereby released from custody of the State of New York unless the petitioner is being detained on another hold.

. In his cross motion which was submitted on October 18, 2006, respondent did not raise the affirmative defense of the statute of limitations.

. Even though it may have been common practice or custom to include a hold on a defendant until the fine in question was paid, the Court in Wampler, nevertheless, found the inclusion of that condition unlawful.